and United States v. Ruiz. I think the parties were aware that we will be also having our argument on Mr. Ruiz's emergency motion. I think we'll just add a minute or so after the clock if you want to take on it. Mr. Nutter, I see you have reserved two of your ten minutes for rebuttal, so if my colleagues are ready. Hearing okay, Judge Calabresi. Can you hear? Are we good? We may be having a problem. Are you able to hear? It's not working. No. Thank you so much. Give us a minute. Sorry. Don't be sorry. Do you want to try? Yeah, I want to make sure you're set, Judge. Yeah, now I'm set. You're good? Yep. Okay. Thank you so much. Mr. Neutter. Thank you, Judge Perez, and may it please the court. Good morning, Your Honors. My name is Daniel Neutter. I represent the defendant appellate, Mr. Edward Ruiz. The 20-month sentence imposed by the district court for the violation of Mr. Ruiz's supervised release is unreasonable, both because it's contrary to the record evidence and also       Mr. Neutter. Thank you, Judge Perez. I'm going to call on Mr. Neutter to come forward and speak. to the murder of Mr. Ruiz, for a mental health condition brought on by acute trauma, relating primarily to the death of his father, rather than any intentional deceit that would be indicative of a breach of the court's trust. Now, the record is clear that for over three and a half years prior to any conduct that would be considered a violation, Mr. Ruiz was a model supervisee. I'll just point out that three and a half years before now, no one had ever heard of COVID-19. Three and a half years is an extremely long time that Mr. Ruiz had complied fully with supervision, had been reduced to the lowest intensity caseload, was engaged in lawful employment, was the breadwinner for his wife and his children. There were no issues or questions, except that in September of 2020, Mr. Ruiz was released. Mr. Ruiz himself went to probation, brought to probation's attention the fact that he was suffering a lot of stress. So if I may, Mr. Nooter, it seems to be that, or at least what I'm hearing, is that you actually just disagree with how the district court interpreted the record and the resulting sentence. I'm hoping that you can tie that disagreement to the very deferential abuse of discretion standard we have and make it clear for us that it's not merely a disagreement or if you had been in the judge's position, you would have reached a different conclusion but why it was actually something warranting a different outcome under the abuse of discretion standard. Yes. Thank you, Your Honor. While we defer to the sentencing court, we defer differently depending on what kinds of findings are being made. And Dorvey speaks to this. When you have sort of a legal conclusion, when you have facts that need to be determined, that is the thing, like under Broxmire, where we defer the most to the court. Didn't Judge Sullivan find that your client was not just using marijuana but was back in selling marijuana, doing the kinds of things that his original crime was doing? And his crime when on probation were, and that that was a violation of trust. Now, you know, he may have been right or wrong on that, but wasn't that the essence of his finding because of which he gave this extraordinarily severe sentence? Yeah. Well, first of all, I would say that the primary reason was because the court found that my client was acting in a deceitful manner. And I think the facts are clear that he was not, other than one exchange with probation. So by that admission, the record establishes a basis for a finding of some level of deceit? Yes. And he did admit that he was deceitful on this one occasion to someone, but the day before, he had actually to the same person, Officer Zondre Jackson, had admitted all these things. But to answer your other point, Judge Calabresi, the previous conduct, while technically also involving some distribution of drugs, was much more serious. Oh, there's no doubt about that. I mean, the difference would be hard drugs and marijuana. But the question, I think, in Judge Sullivan's mind was, this isn't just somebody who now who is using it. He is in the business of selling. Now, whether he's right or not, you can't read what he's saying without seeing that that's what he's concerned about. And respectfully, Judge Calabresi, I agree that there is some issue of the distribution here, although there was no direct evidence of distribution. And I realize circumstantial evidence is evidence. But this is, there are some socially. I mean, he admitted the specification. He did admit the specification. He admitted that there was some distribution. But not that this was the business of this. In fact, it was clear that he had this other auto business that he was doing. And in fact, he got not one but two extensions to his surrender date from originally November 29th to then December 13th and then December 20th, which incidentally is relevant to the emergency motion as well, because he, in part, because he needed to wrap up. Let me ask you a different question. I believe your client is scheduled to go to a halfway house on January 24th and be released in February 9th. That's correct. So assuming it takes a little bit of time for us just to do what you do, what is it exactly that you want from us?  Is it something that Judge Sullivan put on? I mean, if we turn it around and say that it was error and send it back or something, what is it that you'd like to have happen? Thank you. Well, first of all, we would like his immediate release or as soon as possible so that at least he could be essentially re-sentenced to time served at this point. And we agree that if that time's, in certain ways, it's probably too late to really get a full remedy for what we believe would be appropriate. But if at least some of that five years on the supervised release part were also lowered to something lower. But there's no, you don't have an argument that a five-year term of supervised release is substantively unreasonable. No, we don't. This would only be in terms of trying to maybe account for the fact that maybe the incarceratory remedy is not as great as it could be. But I concede that we do not have any dispute about the reasonableness on the five years. Of the addition of supervised release. You know, I don't mean moot in the technical sense. But in a substantive sense, isn't this case pretty close to moot? Isn't it close to? Moot. I mean, I don't mean in the technical, legal sense. But in a practical sense, if the five-year term of supervised release, say, look, okay, now let's see if you can do this and behave. And if the jail time as a practical matter is gone. Well, it's not as a practical matter gone. I mean, any one of us would not want to spend a day in prison that we didn't have to. You know, or in a halfway house or any of these things. I mean, it's easy to think it's not too much of an imposition on his liberty. But it's still the kind of imposition on liberty that's significant and substantial. And no single one of us would want to go through, especially in some of the. Well, I don't think that's what Judge Calabresi is saying. What I think he's saying is if the. Given that he admitted to a specification that is the highest one. That was the basis for the sentencing. How is this going to be shockingly high for us to actually be able to do something? I mean, it's very clear to me that if you were looking at the evidence and maybe one of us was looking at the record, we may have reached a different conclusion. But how are we in the role that we are in with the standard of review going to be able to conclude that we need to do something different? Because the standard of review is not just deference. It's deference under the totality of the circumstances. And I think that's what you need to look at. And I think throughout the brief and reply brief, there are many pages, about 20 pages altogether going, you know, just an argument between the two of them going through all of these circumstances that he's demonstrated honesty throughout pretty much five years except for this one misstatement. He's the one who even brought the travel to California to the court's attention or to the probation's attention. He was the one who told them about the trip to California with the medical marijuana card. It wasn't he required to under his terms of supervised release? Well, he was required to get, and again, we don't dispute, we've never disputed, he admitted the specification that he needed prior authorization. But he thought that he, at his first initial interview with Officer Grady, he admitted, I have work that requires me to go to Connecticut and Pennsylvania and New Jersey. That's in the Cron file. And then when it's transferred to Olivares, he continues to mention that he's doing this and he's going there. Olivares says, well, I thought he knew stuff from reading the terms of supervised release. But if you look at the actual order, you know, it's the standard condition of supervised release, condition one. It says you need preapproval, but it doesn't say what form or manner that needs to take. And it's not until February of 2021, in conversation with now like the fifth probation officer that he's had, Zondre Jackson, who for the first time says there's this form you need to fill out. Before that, there's no mention ever that he actually has to have a form rather than the fact that he's just told them that he's doing it. And they don't tell him, fill out a form or do anything. He's honest that he's doing it, that he's going to Pennsylvania and Connecticut and New Jersey. So why would he think differently about California, I would suggest. I realize I'm over my time. Can you please address your motion? And I think that ties into the question Judge Calabresi asked, like what would happen or what do you envision happening if we grant the motion? Well, we really want to be essentially preserving the status or not literally the status quo of being incarcerated, but the status quo of this court being in a position to grant a remedy without it becoming moot. So the very question that Judge Calabresi asked about mootness, I would say we're not at the mootness stage yet. But if the motion is not granted, we could be at that stage. Let me ask you this. Suppose we granted your motion and then decided that on the merits, that is, granted bail, essentially, and then decided that on the merits, you lose. Wouldn't that be worse for your client? Well, I don't think— That is, if he then had to go back? Well, I think in answering this, I think I need to go to the merits a little bit as well because— No, we've talked about the merits, and we've talked enough about them. I'm just asking you, suppose this was a case where if we were very early on, we would be inclined to grant bail, but then the merits came out the other way. That might make sense. But at this stage, if we granted your motion and then decided four or five weeks down the line that your client lost, wouldn't that be worse? Well— You don't need to answer. I'm just— Well, I'm not sure it would be worse. It certainly would not be good or something that we wanted. But seeing as how there's a procedural unreasonableness— No, but my question is somebody who in two weeks is going to go on supervisor, is going to go on hold, you know, limited, and would be out of jail totally in a month. Is that better than our saying, okay, this is a hard case, we let the guy out on bail, and then a month down the line we say go back to jail? Well, courts have a lot of ability to fashion these. If we found that he needed to serve like four or five or even nine more days in prison, you know, that— and people were determined to make him serve those additional eight or nine days, they could be served on weekends or something. There could be something that could be done to make it somewhat more palatable. But to say that he necessarily has to serve these days is still going to be better to have him not necessarily serving them than the possibility of him serving them. Okay. Thank you so much. Mr. Nooter, we're going to now hear from Ms. Fishner. And you've ten minutes and obviously another minute or so to address the motion. Thank you. May it please the court. My name is Sarah Fishner, and I'm an assistant U.S. attorney here in the Southern District of New York representing the government on this appeal and at the violation of supervised release hearing below. Now, as the court just mentioned, sitting where it is, giving the court the considerable— giving the district court the considerable deference that it deserves in this context on an appeal regarding a judge's sentencing, there is no basis to find that the court's decision here was unreasonable. Judge Sullivan presided over a two-day evidentiary hearing. He heard from multiple witnesses. He received multiple exhibits, and he determined that there was a serious breach of trust here.  The argument that it is contrary to the record is simply based on that assertion. Okay, counsel. Let me tell you what my problem is. I hope you can hear me. I'm sorry. I assume for a moment that what Judge Sullivan did, the result that he came was well within his discretion given this. But he didn't just do that. Before he did that, he got the PSR to change his recommendation and kept after him to do it. He got you, the government, to change your recommendations. He did all sorts of things and then did what he could have done without doing any of those things. And my problem, and I don't have a handle on it, is was that proper? That is, was getting the government and the PSR to change what they said proper? And then you say, well, what difference did it make? That's when we come to questions of anchoring. Would he have actually done what he had perfect power to do without getting you guys to change yours? Now, I don't know if you can do anything. It's completely new. But would you address that? Of course, Your Honor. I do not believe that the court had the government change its position. I do believe that the government was deferential to both the court and probation working for the court based on the facts as the court learned them since the initial violation report to add a specification. That was not made out of thin air. It was based on the facts or the alleged facts at the time that the judge became privy to and that probation learned as well. I'm not so concerned with adding the specification. No, that's a perfectly fine thing. Say, here's something you missed. I'm concerned with what happened after when again and again as the probation came up with a certain amount, they said, no, don't do that. And when you came up with another amount, they said, no, no, no, more. That's what's worrying me. Your Honor, I don't believe that the government had come up with a sentencing recommendation until the close of the hearing. Probation did make an initial recommendation, which at that point was simply based on the defendant's own statements and the probation's initial inquiry with the Yonkers Police Department. But because that probation officer who was in charge of preparing the report was a potential witness at the government's hearing, he was not privy until after all the evidence had come in to what that evidence was. And at the end of the day, once that probation officer was privy to the entire record as the judge was, I believe that the probation officer came closer in line to what the court believed was the appropriate sentence here. But regardless, of course, at the end of the day, this is the judge's decision. It is the judge who based his sentencing decision on the record in this case. There was no undue influence or improper posturing here. There was a guidelines sentence that was based on the specifications that the defendant admitted and that the government then proved and then some. And the judge at the end of the day sentenced the defendant to a guidelines sentence based on that proven most serious specifications. Let me ask, though, didn't also the addition of the specification contribute to the court's perception of overall breach of trust, especially a statutory violation? I mean, you seem to suggest that the two are separate. But given that the court was very plain about the fact that it was a breach of trust, I mean, how can we say that this additional specification didn't contribute to that? What do you see that makes you confident that it didn't have an impact? Because at the end of the day, the court's decision, the underlying facts didn't change. Whether the underlying facts rose to multiple would have satisfied or violated state laws and or federal law does not change what actually happened. And the court again and again made clear that he wasn't sentencing the defendant for his prior underlying conviction. He wasn't sentencing the defendant for the possibility that he would have been convicted of state or federal statutes. He was sentencing the defendant as a judge is supposed to in the violation of supervised release context on the degree of the breach of trust here. Yeah, but doesn't that doesn't that kind of speak back into Judge Calabresi's concern, which is if he didn't need to do that, then why did he? Except for the fact that it helped provide a veneer of reasonableness on it? Well, I think I don't think it was a backward looking thing. I think at the front before any evidence had been presented to the court, the court's own question, given the amount of drugs that were recovered from the defendant's car, is that there should there be another specification that encapsulates the distribution aspect of it all? Which, again, that fact that there was enough possession of marijuana to indicate distribution and personal use would have been would have come out in the evidentiary record, regardless of whether it was tied to a specific specification. But I think that adding that specification also helped the government focus on the importance of the underlying conduct here and the evidence. Do you think that there can be a case, I'm not saying it's necessarily this one, where a district judge sufficiently browbeats, and I use the term the probation officer of the government, to come up with background things and then does what the judge could do anyway without it, where we can say that that is improper? I think there could be a pretext where there's a violation or specification that is completely untethered to the facts that the court... Well, if that's, I'm sorry, if it's not concerned with facts, then the sentence is wrong, and then we have no problem with that. I'm talking about a situation where a judge, to make herself, himself, feel better in some way or comfortable in reaching a sentence, pushes the probation and the government to get away from what they had said and to say certain things, and at that point reaches a sentence which in itself we cannot say is unreasonable. Can that be a procedural error of the sort which would cause us to send it back maybe to the same judge, maybe to another judge? I don't think so, Your Honor. I think that there could be a situation in which the court itself is unable to or did not abide by certain steps taken to justify procedurally or substantively a sentence, but that's not the case here, what the court did here... You know, I'm pushing you a bit, maybe because I am an academic in an academic way. You don't frequently see a two-day hearing on a violation. I mean, I suppose one theory is it's all concocted to justify a predetermined higher sentence than what the earlier specifications would have likely produced. Just another theory is there was concern and a lot of the time and attention went into, I admit, to never having in ten years held a two-day hearing on a violation. It's a lot of work. It's a very extensive record, and it would have... So whether others came along after seeing that and reading it and the judge came along to where he did, I think it would be difficult for me to say somehow that procedurally it was all done to support a predetermined sentence. You were there. What was your impression? I think that's absolutely right, Your Honor. First of all, the court, the defendant was out throughout the entire time of the hearing and even after sentencing to allow him to get his affairs in order, but I think that's reflective that the court had not come to a predetermined decision and that it was extremely invested in learning about what happened here and understanding the full extent. This wasn't just, and I think the court wanted to know, is it just a travel violation? Is it just a misunderstanding? Is it just someone who was smoking marijuana because he was struggling with depression or the loss of his father? How can I understand what happened here so that I understand the degree of the breach of trust? And so I think the entire way, the court had an extremely open mind and wanted to understand the evidence and would have followed it whichever way it led. And in this case, it led and the government learned additional facts in preparing for the hearing to something that was much more serious in terms of the breach of trust, in terms of someone who's on supervised release who was supposed to be living a law-abiding life to a T every single day, that that person was actually living a life quite contrary to that and being misleading in that respect with probation and then, of course, ultimately with the court as well. So I think the two-day hearing, which gave the defense an opportunity to call their own witnesses on that second day, is very indicative of the court's open-mindedness and determination to reach a sentence, reach a determination based on the entire record and understanding exactly what had happened here. Before you sit down, can you talk about New York Penal Law 220.09? What happens if we disagree that Mr. Ruiz violated it? Does that change anything? I don't think it changes anything at all. First, again, the court's decision is based on the extent of the breach of trust. The breach of trust is based on the facts that would have been the same, whether those facts rose to a violation of 220.09 or to some other statute or to no other statute at all, but was simply still a violation of the terms of the defendant's supervised release. There's no challenge to the underlying specification. It clearly seems what he admitted to does not constitute a violation of that law, correct? Even if it doesn't, Specification 2 and Specification 4, which the defendant also admitted to, were based on entirely the same conduct. Specification 2 was also a Grade B violation, just as Specification 1 was. So it's a harmlessness. It's a harmlessness. Absolutely. The violation itself is not being challenged, though I think it's difficult to dispute that he didn't admit to a crime that constitutes the penal law. But given the other facts pledged, you make an argument that it could meet it because there's concentrated cannabis and the like. I don't know. That's not what he admitted to. So I don't know that there's a record to support that. But given that it's part of the sentencing challenge, surely we have to look at whether the admission to this specification in any way likely negatively impacted the sentence. And the arguments you're making now go to that. Yeah, and I don't think that there's any basis for finding that there could have been some, that the judge would have reached some other determination had he only found that the defendant had violated Specifications 2 through 4, partly because the grade of the violation was no greater than what the other violations the defendant was found to have violated, but also, again, because the underlying conduct was really what the court's focus was here. And so putting Specification 1 aside would have no impact based on the record. And the judge even himself at sentencing said, I'm not sentencing you based on violations of state law. I'm not sentencing you based on violations of these underlying alleged crimes. I'm sentencing you, again, for the facts exactly as they happen, again, regardless of whether having a pound of marijuana in the trunk was a violation of 220.09 or the other state statute or the federal statute. The conduct was the same, and putting Specification 1 aside, the record does not support it would have had any impact on the judge's ultimate determination as to what a reasonable, appropriate sentence was here. And do you have anything you'd like to add on the motion? Your Honor, as an initial matter and as the appellant himself points out, the motion should have initially been made in district court, but being that as it may and if this court were to find that now having had the party's full briefing, having heard argument, it is in an equal or better position to decide this motion, I don't believe that there's any basis for granting it, mostly because I do not think that there is a likelihood that the defendant is going to cede on the merits of the appeal here. And, of course, granting release would be undermining the judge's sentence, which is a fairly extraordinary thing. The defendant has not shown, by clear and convincing evidence, that he is likely to succeed on the merits of the appeal and to have the opportunity to get out several weeks early. Okay. Thank you so much. Mr. Nutter, your last two minutes, please. Thank you. A couple of things. There seem to be two different questions. Was there a preconceived notion where Judge Sullivan was taking on this prosecutorial role, or was he sincerely holding this hearing because he really wanted to get to the bottom of all this? And I think the surrounding evidence clearly shows the first. If Judge Sullivan really was concerned with really just wanting to get to the bottom in a neutral way, for one thing, he would have looked at what the statute said in 220.09. That's a clear facial violation, or facially not a violation of that, which he could have looked into. He would have really wanted to listen to Hillel Greene, the probation officer who actually supervised him, whereas when prior counsel for Ruiz tried to get information out from Greene, instead the court interjects. He says, what are you going to do, put my law clerk up here next, put my court deputy up here next? I'm the one who decides. Even though when Mr. Runke says, well, in fact, Mr. Greene has unique insight because he was the person who actually supervised him for all this time dealing with the mental health issues and even getting him into mental health and substance abuse treatment. So it's not that the court was equally and openly just trying to create a full picture. The court was taking on to itself a specifically prosecutorial role. And I would suggest that when the court does arrogate that prosecutorial role to itself, then the amount of deference that this court should give is diminished, because somewhere along the line there needs to be ---- There needs to be a standard of law that when the court is in a prosecutorial role, there should be something other than abusive discretion. Are you asking us to create new law on that, or do you have support for that somewhere? No, I don't think it's new law. I think it's law that's already there. Unfortunately, I don't have the name of the case in front of me, but just a few years ago there was a Supreme Court case that I cited at the end of my reply brief. It's a hyphenated case with two S's that I can't something Smith. But it's specifically about where the Ninth Circuit or a judge in the Ninth Circuit basically took on the role of the parties and substituted. In the context of supervisory relief, which is court supervision. It's not pre-indictment. It's probation. Judge Sullivan is right. The probation department does work for the court. And it's different when it is part of the sentence is court supervision and the court is responsible for deciding appropriate specifications and appropriate sentence. But it's true. But that's exactly the same reason why deference needs to be a little bit different as well so that there is still some essentially neutral uninterested party that's there. There's probably no single principle more core to law than you can't be like the judge in your own dispute. Well, to Judge Perez's question, the case you cite, I often remember cases similarly like SS-, that's not for that proposition, because is it? Was that in the context? No, it's not directly on point. And in fact, the facts were more egregious there. In fact, the court even appointed an amicus to argue issues that neither of the parties had done. So I'm not saying that that is directly on point, but it certainly speaks to the issue about the roles that we expect the parties to have in an adversarial system and the more neutral refereeing role that we expect the judge to have. And if the judge, and maybe it's authorized to a certain extent in supervised release, is not going to be as dispassionate and impartial as we would ordinarily expect because the court is itself involved in the supervision, then I would suggest that that implies that at least at the appellate level, we need a little bit more of a neutral way to be able to look and ensure that fundamental fairness is being conducted. So if my colleagues have no questions, thank you so much. Thank you very much. We will take it under advisement.